UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA
AND GLEN GREENWOOD,

    Plaintiffs,

v.                                                  Case No. 05-cv-799
                                                  JUDGE GREGORY L. FROST
STATE OF OHIO, *et al.*,              Magistrate Judge King

    Defendants.


UNITED STATES EQUAL EMPLOYMENT    Case No. 05-cv-881
OPPORTUNITY COMMISSION AND        JUDGE GREGORY L. FROST
GLEN GREENWOOD,                              Magistrate Judge King

    Plaintiffs,

v.

OHIO CIVIL SERVICE EMPLOYEES
ASSOCIATION, *et al.*,

    Defendants.

## OPINION & ORDER

This matter comes before the Court for consideration of a petition for attorneys' fees (Doc. # 57) filed by Plaintiff-Intervenor Glen Greenwood ("Greenwood"), a memorandum in opposition (Doc. # 64) filed by the State of Ohio, Ohio Department of Administrative Services, Ohio Office of Collective Bargaining, and Ohio Environmental Protection Agency (collectively "State Defendants"), a memorandum in opposition (Doc. # 62) filed by Ohio Civil Service Employees' Association, AFSCME Local 11, AFL-CIO ("Union"), and a reply to each. (Doc. #

1

66, Doc. # 67.)  An oral hearing was conducted on December 1, 2006.

## A. Background

This is a consolidated Title VII action brought by the United States against the State Defendants and the Union as well as an action brought by the Equal Employment Opportunity Commission ("EEOC") against the Union and the State Defendants.  The United States named the Union and the State Employment Relations Board ("SERB") as Rule 19 Defendants.  The EEOC in its action, however, named the Union as the primary defendant and named the State Defendants as Rule 19 Defendants.  Greenwood was allowed to intervene and filed an Intervenor's complaint in both suits.

Greenwood is a member of the Union.  He is a Presbyterian who claims to oppose "abortion" and "gay marriage" on religious grounds despite his Union's support of those issues.  The State of Ohio has a statute, Ohio Rev. Code § 4117.09 (C), that permits SERB to exempt a bargaining unit member from payment of dues or fair share fees to his union if he "is a member of and adheres to established and traditional tenants or teachings of a bona fide religion or religious body which has historically held conscientious objections to joining or financially supporting an employee organization."

Pursuant to Ohio Rev. Code § 4117.09(C), Greenwood asked the Union to redirect his fair share fees to a charity on June 17, 2002.  *See* Ohio Rev. Code § 4117.09(C) (stating that "[u]pon submission of proper proof of religious conviction to the board, the board shall declare the employee exempt . . . [t]he employee shall be required, in lieu of the fair share fee, to pay an amount of money equal to the fair share fee to a non-religious charitable fund . . .").  The Union directed Greenwood to apply to SERB for a statutory exemption.  When determining whether to

grant an exemption, SERB followed guidelines set forth in a SERB directive. Under this directive, SERB would not grant religious accommodations pursuant Ohio Rev. Code § 4117.09(C) to public employees who hold sincere religious objections to joining or financially supporting employee organizations, but are *not* members and adherents of religions that historically have held conscientious objections to such support. In its September 27, 2002 ruling SERB concluded that Greenwood's basis for religious exemption was personal, and that he failed to file religious verification of his church's historically held conscientious objections to joining or financially supporting an employee organization. Consequently, SERB denied Greenwood's application.

Greenwood then filed an EEOC charge against the Union on December 9, 2002. *See, e.g., New York Gaslight Club v. Carey*, 447 U.S. 54, 65 (1980) (stating that after proper exhaustion of state or local remedies, an employee who seeks an accommodation of his religious beliefs is required to file administrative charges with the EEOC). He also requested from the Ohio Office of Collective Bargaining ("OCB") that his fees be placed in escrow pending resolution of his dispute with the Union. OCB denied his request. Greenwood then proceeded to file an EEOC charge against the State Defendants as well. After the EEOC found merit in Greenwood's claim, neither the Union nor the State Defendants accommodated him.[1]

As a result, the United States and EEOC filed these suits alleging that the State Defendants and Union violated Title VII. Specifically, the United States and EEOC alleged that the State Defendants and the Union did not permit Greenwood to redirect his union fees to a charity, but allegedly made accommodations available to others on a discriminatory basis.

[1] This Court will later address whether the Union and/or the State Defendants had the duty and/or the ability to accommodate Greenwood.

On June 23, 2006, the Union made a Fed R. Civ. P. 68 Offer of Judgment to Greenwood that he accepted on July 7, 2006 and filed with the Court on September 5, 2006. The offer provided that Greenwood's union fees that he paid after putting the Union on notice of his objection would be remitted by the Union to a mutually agreed upon charity. It further stated that Greenwood's future union fees would be sent to a charity of his choice as long as he was still represented by the Union. The offer of judgment also agreed to pay expenses, costs, and attorneys' fees for time directly attributable to Greenwood's pursuit of this action against the Union. Then, the State Defendants and the Union entered into a consent decree signed by this Court, which provides that Greenwood is eligible to recover attorneys' fees from the State Defendants and the Union subject to the collective upper limit of $166,600.00

In the present action, pursuant to Fed. R. Civ. P. 54(2), Greenwood's counsel, Bruce N. Cameron, asks this Court to award his reasonable attorney's fees and expenses totaling $123,202.70. Greenwood's other local counsel, Donald C. Brey, asks this Court to award his reasonable attorney's fees and expenses totaling $8,972.50. Brey's request is uncontested.

### B. Discussion

**1. Arguments**

Greenwood requests attorneys' fees and expenses on several grounds. First, he posits that 42 U.S.C. § 2000(e)-5(k) provides for the award of attorneys' fees to the prevailing plaintiff. Second, he argues that he is entitled to attorneys' fees from the Union based upon his acceptance of the Union's offer of judgment. Moreover, he contends that he is entitled to attorneys' fees from the Union and the State Defendants pursuant to the consent decree that they executed. As to the amount of his requested fees, Greenwood argues that his fees are reasonable and not

duplicative.  Rather, he contends that his hours spent were appropriate.  He claims that they reflect the State Defendants' decision to make this case more complex. Allegedly, the State Defendants transformed a simple religious accommodation case into a factual battle over the sincerity of Greenwood's religious beliefs.  Specifically, Greenwood references the following: (1) SERB's denial of his request for an accommodation; (2) the State Defendants' refusal to escrow Greenwood's Union fees pending resolution of the case; (3) and the State Defendants' refusal to enforce the findings of the EEOC by granting Greenwood his accommodation until they entered into a new collective bargaining agreement ("CBA") with the Union.

In response, the State Defendants recognize that they are clearly liable for some attorneys' fees pursuant to the consent decree.  They argue, however, that the "cap" on attorneys' fee recovery in the consent decree was not the product of negotiations regarding the reasonableness of Greenwood's fee demand.  Rather, the State Defendants allegedly only entered into the consent decree so they would not be subject to infinite liability.  The State Defendants object to the reasonableness of the Greenwood's requested fees on the grounds that his attorneys' fee demand is excessive.  They contend that the most of the hours spent were either duplicative of the United States and EEOC's efforts and therefore wasteful or irrelevant or that they were expended for relatively routine tasks.  Finally, they allege that the hours spent were disproportionate to the results obtained.

To the extent that the State Defendants are liable, however, they argue that their entire liability is subject to their right of indemnification by the Union subject to Section 4.05 of their CBA with the Union, which states that "[t]he Union agrees to indemnify and hold the Employer harmless against any and all claims, suits, orders, or judgments brought or issued against the

5

Employer as a result of any action taken or not taken as a result of the Union under the provisions of this article." The State Defendants assert that the indemnification clause is both applicable to this situation and is valid because it does not cover the cost of the State Defendants' defenses to the litigation.

Lastly, the Union argues that is not liable because none of Greenwood's attorneys' fees are directly attributable to Greenwood's pursuit of this action against the Union. The Union posits that it does not have a legal duty to grant an exemption under Ohio Rev. Code § 4117.09 (C). Furthermore, the Union argues that it also did not have the independent ability to grant an exemption to Greenwood because the State of Ohio had not officially sanctioned the Presbyterian Church as a doctrinally appropriate belief that may receive an exemption. Rather, the Union contends that it fulfilled its statutory obligations by referring Greenwood to SERB when he requested an accommodation. It also argues that Greenwood should not be treated as a prevailing party, because he did not play a significant role in the litigation. Alternatively, if the Union is liable, the Union contends that the Court should reduce the attorneys' fees awarded against it to less than $10,000.

**2. Issues Presented**

This case presents several issues for the Court to resolve. Preliminarily, this Court will assess whether Greenwood's request for $123,202.70 in attorneys' fees and expenses is reasonable, and the degree to which the Union and the State Defendants are liable. Secondly, to the extent that the State Defendants are liable, this Court must consider whether the indemnification provision is valid as a matter of public policy. If so, the Court must then decide if it is applicable to the entire amount of the State Defendants' liability. The applicability of the

indemnification provision raises several additional issues. The first additional issue is whether Ohio Rev. Code § 4117.09(C) and the former SERB directive prevent the Union or the State Defendants from accommodating a bargaining unit member if he or she is entitled to an exemption under Title VII, or did both the Union and the State Defendants have a separate duty to accommodate Greenwood under Title VII. Second, if the Court determines that both the Union and the State Defendants had independent duties despite the Ohio statute and SERB directives, the Court must decide whether the indemnification provision is inapplicable to the portion of the attorneys' fees accrued because of the State Defendants' decision to first deny Greenwood's accommodation request and then the later refusal to comply with the EEOC's determination.

### 3. Reasonableness of Attorneys' Fees

Title VII provides Greenwood with a statutory right to intervene in the litigation, which he started before the EEOC. In light of the offer of judgment, the consent decree, and the relief Greenwood obtained, the Court finds that Greenwood is the prevailing party. Pursuant to 42 U.S.C. 2000e-5(k), Greenwood, as the prevailing party, is entitled to attorneys' fees.

This Court next turns to the issue of whether Greenwood's requested award of $123,202.70 in attorneys' fees and expenses is reasonable. To aid in this determination, the Court looks to precedent involving fee applications. Such precedent indicates that Greenwood bears the burden of proving that the requested monies are reasonable. *Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999). A reasonable fee is one that attracts competent counsel while avoiding a windfall to counsel. *Id*. at 472. In determining what is reasonable, the general approach is to "first determine the lodestar amount by multiplying the reasonable number of hours billed by a

reasonable billing rate." That amount can then be adjusted based on a twelve-factor test used for assisting in the determination of the reasonableness of an application for attorney's fees.[2] *Id*. at 471-72 n.3 (adopting factors set forth in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714 (5th Cir. 1974)). These factors include:

> (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id*. at 472. There is a "strong presumption that the lodestar represents the reasonable fee." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

Guided by the foregoing analytic framework, the Court should first calculate the lodestar amount. Although the United States Supreme Court has recognized that oftentimes the traditional twelve factors "are usually subsumed with the initial calculation of hours reasonably expended at a reasonable hourly rate," the Court should then address the relevant factors after the lodestar analysis. *Hensley v. Eckerhart*, 461 U.S. 424, at 430 n.3 (1983)

Plaintiffs have the burden of "documenting the number of hours spent on the case and of maintaining records in a way that would allow a court to determine how much time was spent on each claim." *Moore*, 355 F.3d at 566. In discussing the amount of detail necessary in documentation submitted to a court, the Sixth Circuit has held that "the documentation offered in

---

[2] Although the relied-upon *Johnson* case has been abrogated, its twelve-factor test remains good law. *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989) ("*Johnson*'s 'list of 12' thus provides a useful catalog of the many factors to be considered in assessing the reasonableness of an award of attorney's fees").

support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *United Slate, Tile and Composition Roofers, et al., v. G & M Roofing and Sheet Metal Co., Inc.*, 732 F.2d 495, 502 n.2. (6th Cir. 1984). The Court may reduce the award when the submitted documentation is inadequate. *Reed*, 179 F.3d at 472. In reviewing the submitted billing statements, the Court is neither in the business of nor interested in second-guessing or micro-managing any firm's business practices.

Here, the Court has reviewed the billing entries and has discerned that they contain sufficient detail, when read in context, to enable the Court to determine that counsel reasonably spent his time in pursuit of his client's interests. (Doc. # 57-3.)

As a general matter, the Sixth Circuit has recognized that one issue that arises regarding the reasonableness of hours billed is "whether the lawyer . . . unnecessarily duplicat[ed] the work of co-counsel." *Coulter v. State of Tennessee*, 805 F.2d. 146, 151 (6th Cir. 1986). The appellate court has held that a district court has the discretion to make a simple across-the-board reduction, by a certain percentage, in order to account for duplicative hours. *Hudson v. Reno*, 130 F.3d 1193, 1209 (6th Cir. 1997) (applying across-the-board reduction of 25%), *overruled on other grounds*, *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843 (2001). In this case, the Court finds that an across the board reduction is not warranted because the time spent by Greenwood's counsel on each task was reasonable, appropriate and not necessarily duplicative of the efforts of the United States and EEOC.

Specifically, the Court rejects the State Defendants' argument that counsel's work was excessive given the straightforward nature of the claim. Rather, this Court is convinced by

9

counsel's contention that the hours accrued were reasonable due to the fact that the State Defendants curiously prolonged the litigation.  This Court first notes that the State Defendants denied Greenwood's request for an accommodation and refused to escrow his funds pending resolution of the case.  More significantly, this Court is troubled by the fact that they refused to initially comply with the EEOC's determination that Greenwood had been wrongly denied a religious accommodation in violation of Title VII.[3]  Its decision was implicitly predicated on its finding that Greenwood held a sincere religious belief that was entitled to an accommodation.  Rather than litigating the narrow issue that had been determined by the EEOC, the State Defendants chose to inject into the litigation that they doubted the sincerity of Greenwood's religious beliefs.

The Court has also considered the amount involved and the results obtained.  Indeed, according to *Hensley*, the single most important factor regarding the reasonableness of fees is the result that is obtained.  *Id.*, 461 U.S. at 434-36.  Under *Hensley*, if counsel obtained excellent results, the Court should award the full fee request.  *Id.* at 435.  In contrast, partial victory cases occur "where plaintiff is deemed prevailing even though he succeeded on only some of his claims for relief."  *Id*. at 439.  In partial victory situations, the Court may reduce the fee award.  *Id*.  "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole."  *Id*.  Stated simply, a party who partially prevails is entitled to an award of attorneys' fees commensurate to that party's success.  *Krichinsky v. Knox County Sch*., 963 F.2d 847, 850 (6th Cir. 1992).

---

[3] The State Defendants later entered into a state-wide contract provision with the Union on this subject and agreed to exercise its "best efforts" to incorporate the new accommodation procedures into its collective bargaining agreements.

In this case, Greenwood obtained the exact results that he sought to achieve. The Court acknowledges that the Union made Greenwood an offer of judgment, which he accepted. The offer of judgment provided that Greenwood's union fees, which he paid after placing the Union on notice of his objection, would be remitted by the Union to a mutually agreed upon charity. It further stated that Greenwood's future union fees would be sent to a charity of his choice as long as he was still represented by the Union. The offer of judgment also agreed to pay expenses, costs, and attorneys' fees for time directly attributable to Greenwood's pursuit of this action against the Union.

Moreover, the State Defendants and the Union entered into a consent decree signed by this Court that provides that Greenwood is eligible to recover attorneys' fees from the State Defendants and the Union subject to the collective upper limit of $166,600.00. This Court also seriously considers the fact that as a result of this litigation, the State Defendants entered into a new state-wide provision with the Union and its other collective bargaining partners in which they agreed to exercise their best efforts to incorporate the new accommodation procedures in all its collective bargaining agreements. Consequently, the provision now enables all those who can prove that they have sincere religious objections to joining or supporting an employee organization to be able to claim that they are entitled to an accommodation regardless of their denominational preference. This was not, therefore, a partial victory of relief for Greenwood. Rather, this Court finds that Greenwood obtained excellent results in light of the relief sought as manifested by the offer of judgment, the consent decree, and the new state-wide bargaining provisions.

This Court concludes that Greenwood's request $123, 202.70 in attorneys' fees and

expenses is reasonable.

### 4. Allocation of Liability

This Court must now consider whether the attorneys' fees should be allocated to both Union and the State Defendants. The Union argues that is not liable because none of Greenwood's attorneys' fees are directly attributable to Greenwood's pursuit of this action against the Union. This Court finds that the Union forfeited its argument that it is not liable. First, the Union acknowledged its liability when it made an offer of judgment to Greenwood. Second, it entered into a consent decree with Greenwood.

As for the liability of the State Defendants, they recognize that they are clearly liable for some attorneys' fees pursuant to the consent decree. They acknowledge that "[i]ndeed, the defendants would be hard-pressed to deny Greenwood's entitlement to some attorney fees in light of their agreement, and the Court's order, that Greenwood shall be eligible to recover from the State and OSCEA reasonable costs and attorneys' fees."

Thus, this Court finds that both the State Defendants and the Union are liable for a portion of attorneys' fees directly attributable to each of them. To the extent that the State Defendants are liable, however, the State Defendants argue that their entire liability is subject to their right of indemnification by the Union pursuant to Section 4.05 of its CBA with the Union, which states that "[t]he Union agrees to indemnify and hold the Employer harmless against any and all claims, suits, orders, or judgments brought or issued against the Employer as a result of any action taken or not taken as a result of the Union under the provisions of this article." Therefore, this Court must now consider whether the indemnification provision is valid as a matter of public policy.

An indemnification provision that insulates an employer from virtually all consequences of non-compliance with Title VII or other federal constitutional or statutory duties, including its own costs of defenses and expenses of compliance as a result of litigation, is void of matter of public policy.  *Weaver v. Univ. of Cincinnati,* 970 F.2d 1523 (6th Cir. 1992).  In *Weaver*, the indemnification clause in a collective bargaining agreement was held to be void as a matter of public policy.  *Weaver,* 970 F.2d at 1528.  The Sixth Circuit couched its reasoning in the fact that the indemnification clause relieved the employer of all consequences of its non-compliance of its duties including the reasonable costs and expenses of defending legal actions.  The Sixth Circuit distinguished *Weaver* from a Third Circuit decision, *Hohe v. Casey*, 956 F. 2d 399 (3d. Cir. 1992) (holding that the indemnification provision is valid as matter of public policy challenge because it did not indemnify the employer against the costs and expenses of defending legal actions against it).  Implicit in the Sixth Circuit's decision in *Weaver* to strike down the indemnification provision is that the Sixth Circuit would have upheld it if it had not contained language indemnifying the employer for the costs of its defenses.

Like the indemnification provision in *Hohe*, Section 4.04 of the CBA between the Union and the State Defendants does not indemnify the State Defendants for any costs or expenses in defense of litigation against it because of the Union's actions or inactions.  Thus, because the indemnification clause does not shift the entire burden of Title VII compliance from the State Defendants to the Union, the State Defendants still have an incentive to comply with their Title VII duties.  As a result, this Court finds that the indemnification provision in the CBA between the Union and State Defendants is valid as a matter of public policy.

This finding leads the Court to next decide to what extent the indemnification provision

13

is applicable here.  Section 4.05 of the CBA states "[t]he Union agrees to indemnify and hold the Employer harmless against any and all claims, suits, orders, or judgments brought or issued against the Employer as a result of any action taken or not taken as a result of the Union under the provisions of this article."  Contrary to the State Defendants' assertion, it is clear from the language of the provision that their right to indemnification by the Union is contingent on the fact that the Union brought about the litigation against the State Defendants.  The Court finds that the indemnification provision, therefore, does not apply to the extent that the State Defendants' brought about their own liability.

Not withstanding the SERB directive and Ohio Rev. Code § 4117.09(C), the next issue is whether the State Defendants and/or the Union had a duty to accommodate Greenwood under Title VII.  Under the SERB directive, pursuant to Ohio Rev. Code § 4117.09(C), the State would not grant religious accommodations to public employees who hold sincere religious objections to joining or financially supporting employee organizations, but are *not* members and adherents of religions that historically have held conscientious objections to such support.  The State Defendants contend "that nothing in this statute *prevented* OCSEA from accommodating bargaining unit members whose beliefs systems did not fall within the statute's narrow terms, yet were entitled to a religious accommodation under Title VII."  (Doc. # 64 at 3,4.)

In contrast to the statute and directive, Title VII is broader as it protects, "all aspects of religious observance and practice, as well as the belief" regardless of membership in a religion, body or sect.  42 U.S.C. § 2000(e)(j); *see Wilson v. National Labor Relations Board,* 920 F.2d 1282 (6th Cir. 1990) (holding that the religious objector provision of the NLRA violated the

14

establishment clause of the First Amendment[4]). Title VII is an independent and separate source of rights. *See International Assoc. Of Machinsists & Aerospace Workers, Lodge 751 v. Boeing Company*, 833 F.2d 165 (6th Cir. 1987). According to the Supreme Court, "the legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes. The clear inference is that Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination." *International Assoc. Of Machinsists & Aerospace Workers, Lodge 751*, 833 F.2d at 169-170 (quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 48-49 (1974). Moreover, in cases brought under Title VII, the Sixth Circuit has held that the duty to accommodate an employee's religious beliefs extends to unions as well as employers. *See, e.g, Wilson v. National Labor Relations Board,* 920 F.2d at 1286.

Thus, this Court rejects the Union's contention that it did not have the legal duty or ability to grant Greenwood a religious exemption pursuant to his rights under Title VII. This Court finds that Ohio Rev. Code § 4117.09(C) did not abrogate the Union's duty to comply with Title VII. The Union did have a legal duty to take reasonable steps to accommodate Greenwood's religious beliefs.

Moreover, this Court finds that the State Defendants' also brought about their own liability. First, they wrongly denied Greenwood's initial application for an exemption based solely on Ohio Rev. Code § 4117.09(C) as if it also precluded the State Defendants from granting an accommodation pursuant to Title VII. Second, they initially failed to comply with

---

[4] This Court notes that § 19 of the National Labor Relations Act contained language that is virtually identical to the Ohio Rev. Code § 4117.09(C). Neither party in the case, however, has challenged the constitutionally of Ohio Rev. Code § 4117.09(C).

15

the EEOC's determination that Greenwood was not entitled to an accommodation.

### C. Conclusion

In conclusion, this Court finds that both the Union and the State Defendants are culpable. The State Defendants' do not have the right to be indemnified by the Union for the portion of the attorneys' fees that Greenwood accrued as a result of the State Defendants' inaction or action in this case. It impossible for this Court to determine what portion of Greenwood's attorneys' fees are attributable to his litigation against the State Defendants and the Union, respectively. Therefore, in light of principles of equity, this Court **ORDERS** Greenwood's request for $123, 202.70 in attorneys' fees be divided evenly between the State Defendants and the Union. Each party is liable for $61,601.35 in attorneys' fees to be paid to Greenwood. This Court also **ORDERS** that Greenwood's request for $8,972.50 in attorneys' fees be divided evenly between the State Defendants and the Union. Each party, therefore, is liable for a total amount of $66,087.60 in attorneys' fees.

Thus, this Court **GRANTS** Greenwood's petition for attorneys' fees. (Doc. # 57.) The clerk shall enter judgment accordingly and terminate this case upon the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED.**

    /s/   Gregory L. Frost

**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**